## A. L. McAllister *v.* J. W. Mitchner.

1. **Deed.** *Delivery to grantee; not an escrow.*
   A deed delivered to the grantee is not an escrow, and any verbal agreement qualifying the effect of such delivery is void.

2. **Same.** *Surrender of deed to land. Title unaffected.*
   Except where there exist the elements of an estoppel *in pais*, a surrender and cancellation of a conveyance of title to land in no manner affects the rights of the parties. *Burton* v. *Wells*, 30 Miss. 688; 43 Ib. 140; 57 Ib. 594; 61 Ib. 299.

3. **Same.** *Re-delivery to grantor. Does not revest title.*
   Mere re-delivery to the grantor of an executed deed to land, though in accordance with a verbal agreement had at the time of making the instrument, will not operate to revest title in the grantor.

FROM the chancery court of Lee county.

W. T. HOUSTON, ESQ., a member of the bar, by agreement of parties, presided as special Chancellor in this case.

The appellant, A. L. McAllister, owned a tract of land in Chickasaw county, Mississippi. In 1883 she signed, acknowledged, and delivered to her daughter, Mrs. Mitchner, a deed conveying to her this tract of land, reserving therein an annual rental of $100 during her own life, and providing that she, the grantor, should pay no rent for any part of the land occupied by her as a home while she lived. The deed by its terms was to take effect immediately on its delivery. It was understood, however, that the deed was not to be placed upon record, as the grantor did not desire that her husband should know that it had been executed, and it was not recorded.

The grantee, Sarah Mitchner, was the wife of appellee, J. W. Mitchner. She and her husband were then residing upon the land, and continued to do so until the year 1889, when the said Sarah Mitchner died childless, leaving her husband her only heir. Soon after her death, her husband discovered that the deed above mentioned was not among her private papers, where it had usually been kept. After having an interview with Mrs. McAllister, in which he ascertained that she had possession of the deed, he filed this bill against her, alleging the above facts as to the execution of the instrument, and, further, that the defendant had wrongfully obtained possession of the same. The prayer of the bill was that the defendant should return the deed, or be compelled to execute another. The defendant answered the bill, and, among otherthings, in her answer she made the following statements :—

"She denies that she did in 1883 make and execute to her daughter a deed to said land and deliver the same. She says the truth in relation thereto is, that she did, about 1883, make and sign a paper and acknowledge the same, and gave the said paper into the hands of her said daughter, not as a delivery thereof to take effect as a deed, but to be simply held by said Sarah Mitchner, not as a deed to pass an interest in said land, unless this defendant should die before said Sarah, and with the distinct understanding and agreement that should the said Sarah think she was going to die before defendant, or should defendant believe that said Sarah was likely to depart this life before defendant, then, in either event, it was agreed that the said Sarah was to hand said paper back to defendant to be cancelled and destroyed ; and in the meantime it was specially agreed that said paper should not be recorded, and should be kept from the sight and possession of any one except her said daughter, and not to be placed even in the hands of her husband, said complainant ; and that said paper was not delivered to take effect as a deed at all, but was to be kept by said Sarah Mitchner for this defendant, and was to be delivered back to defendant if she should ask for the same on the belief that said Sarah should or would likely depart this life before defendant, or should said Sarah Mitchner so think or believe ; and respondent

avers that said Sarah Mitchner never claimed to be the owner of said land under said paper or otherwise. . . . . She admits that said Sarah and her husband, the complainant, were in possession of said land at the time he alleges said deed was made, and they remained in possession until the death of said Sarah. . . . . And she denies that said Sarah ever claimed to be the owner of said land under said alleged deed or otherwise. . . . . And she denies that the said alleged deed conveyed the land to said Sarah. She admits that said alleged deed was not filed for record, nor recorded, but was kept among the private papers and letters of said Sarah to within a short while before her death. . . . . She admits that said alleged deed was among the private papers of said Sarah Mitchner a short while before her death, and that the same cannot now be found by complainant, and she admits that she has destroyed said alleged deed, but she denies that the destruction of said alleged deed casts a cloud upon complainant's title, and denies that complainant ever had title to said land. Defendant states that the fact in relation to said paper, called a deed by complainant, is, that about six or eight days before the death of said Sarah Mitchner, and when said Sarah was convinced she could not recover, she told the defendant where said paper was, and directed defendant to go to her trunk and get the same and bring it to her, which this defendant did. She, the said Sarah Mitchner, took said paper in her hand and looked at it, and delivered it to this defendant, to be by her cancelled and destroyed, as was the original agreement in relation thereto; and the purpose and intention of said Sarah Mitchner in giving up said paper to defendant was to restore to defendant whatever claim she had or might claim under said paper, and with the purpose and intention of preventing defendant from ever having any trouble in relation to said land, the same having always been recognized by said Sarah as belonging to this defendant. And the defendant has destroyed said paper, as was the agreement between her and said Sarah, and as was directed by said Sarah, and the said paper was delivered up to defendant to be cancelled and destroyed voluntarily by said Sarah, and with the intention of placing said paper out of the reach of any person whatever,

and with the intention of transferring to defendant whatever interest, if any, which said Sarah might claim by virtue of said paper in said land. She denies that said alleged deed conveyed the land named to said Sarah Mitchner."

As the decision of the court is made to rest upon these allegations, it is unnecessary to set out the other averments of the answer. A great deal of testimony was taken, and the cause was heard on pleadings and proof, a decree being rendered in favor of complainant. From this decree the defendant appealed.

Much testimony was taken as to the mental condition of the said Sarah Mitchner at the time the instrument was redelivered to defendant, and as to the understanding upon which it was originally delivered, and the reasons therefor, the reasons and circumstances of the execution of the instrument, and the intention of the parties at the time; but, in view of the decision of the court, it is not necessary to set out the evidence as to these matters, or the extended argument of counsel based thereon.

It was also averred in the answer that the instrument was originally executed by defendant because of false and fraudulent representations and statements made by and at the instance of the complainant, J. W. Mitchner; but there was very little testimony taken in support of this averment, and, as the point is not mentioned in the opinion of the court, it is not deemed necessary to state any of the facts in regard to it.

Among other things, the defendant testified that she did not intend that the instrument should operate as an absolute deed, but only as stated in her answer, and that she supposed that a deed, to be effectual, had to be recorded.

It is not claimed that anything was said or done by Mrs. Mitchner, at the time of the surrender of the deed, to induce defendant to change her position. She rested her defense entirely upon the facts set forth in the foregoing averments of the answer.

*Barry & Beckett,* for appellant,

Filed an elaborate brief discussing the facts, and as to the question decided by the court making the following points :—

The authorities hold that the mere manual tradition of a deed is

not all that is necessary. It must be delivered to the grantee or some one for him, with the intention of passing the title, and of placing it entirely out of the control or dominion of the grantor, and if the delivery is subject to recall it is not a complete delivery, and does not pass title. *Stevens* v. *Stevens*, 150 Mass. 559 ; *Bovee* v. *Hinde*, 25 N. E. Rep. (Ill.) 695 ; *Martling* v. *Martling*, 20 At. Rep. (N. J.) 41 ; *Roberts* v. *Jackson*, 1 Wend. (N. Y.) 478 ; *Black* v. *Lamb*, 12 N. J. Eq. 108 ; *Little* ·v. *Gibson*, 39 N. H. 510 ; *Sands* v. *Sands*, 112 Ill. 225.

While the delivery back of a deed does not divest the title as to creditors, yet it estops the grantee and those claiming under him from proving the contents or having it re-established. *Bank* v. *Eastman*, 44 N. H. 438 ; 4 Ib. 191 ; 24 Ib. 248 ; 3 Head (Tenn.), 562 ; 10 Mich. 523 ; 4 Watts (Pa.) 199 ; 7 Ind. 178 ; 9 Ib. 323 ; 13 Ib. 340 ; 31 Ib. 267 ; 17 Pick. 214 ; 21 Me. 164 ; 80 Ib. 174 ; 6 Ala. 802 ; 51 Ib. 390 ; 112 Ill. 150 ; 35 Ohio, 126 ; 12 Wend. (N. Y.) 173 ; *Perry* v. *McLain*, 66 Miss. 145 ; *Hart* v. *Heaphy*, decided by this court at the present term.

Where one party is estopped, all volunteers claiming under him are estopped. *McCravy* v. *Remson*, 19 Ala. 430.

It is shown that the appellant did not intend that the instrument should take effect absolutely, and that she believed it was necessary for a deed to be recorded to pass title. On the facts of the case the instrument should not be re-established. 31 N. J. Eq. 594 ; 24 Ib. 243 ; 5 Del. Ch. 507 ; Notes to *Huguenin* v. *Baseley*, 2 Lead. Cas. in Eq. 1156. The facts in this case are very similar to those in *Russell's Appeal*, 75 Pa. 269, 287.

Defendant testified that she thought the deed would be safe with her daughter under the agreement; that she did not advise with any one as to the effect of the delivery, and that she never thought of taking the risk of her daughter's death. The whole case shows that she did not intend to part with the absolute control of the instrument.

*Clayton & Anderson* and *Thos. J. Buchanan, Jr.,* on the same side,

Filed a very lengthy brief, as to the decisive question in the case, making the following points :—

1. Appellant was legally in possession of the deed by gift from her daughter, and a court of equity should not make a decree requiring her to deliver up the same to appellee, or to make another. On this point see *Perry* v. *McLain*, 66 Miss. 145. In that case it was held, that while an oral agreement to rescind a written contract for the sale of land could not be enforced, it might present a good ground for refusal by the chancery court to specifically enforce the original contract.

2. Mrs. Mitchner, in her lifetime, having given the deed to her mother, with the intention thereby of restoring to her the title to the land, although this may not have actually passed the title, yet neither she nor her husband, who claims under her, could, after that, give evidence of the contents of the deed, because of the rule of law that parol evidence cannot be given of a written instrument where the party beneficially interested therein has purposely destroyed the writing, or voluntarily placed it out of his power to produce the same. This being true, equity will not in this case decree restoration of the deed to appellee, and this, whether it was actually destroyed, or merely withheld by appellant under the gift from her daughter. In support of this proposition we refer to the following authorities: 17 Am. Dec. 410; 55 Ib. 234; 63 Ib. 418; 65 Ib. 283; *Thompson* v. *Thompson*, 68 Ib. 638; 75 Ib. 783; 82 Ib. 55; 6 Cush. (Mass.) 163; 9 Pick. 104; 11 Gray, 267; 10 Mass. 403; Tiedeman's Real Prop. § 741; 3 Washburn's Real Prop. p. 587.

In the case of *Thompson* v. *Thompson*, *supra*, the question arose between the grantee and the devisee of the grantor, while in the case at bar it is between the heir of the grantee and the grantor.

The position of opposite counsel that there could be no estoppel until action had been taken, is not sustained by the above authorities. Nor will it do to say that the doctrine we contend for only applies where the property has passed into the hands of third persons. The true ground is, that the grantee and those claiming under her cannot give evidence of a deed she voluntarily surrendered with the view of passing the title back, where the deed is not recorded. If the deed had been recorded, the appellee might have

used a certified copy; so that the principle for which we contend can only apply to an unrecorded instrument. On this point see especially *Gugins* v. *Van Gorder*, 82 Am. Dec. 55.

In the cases of *Thompson* v. *Thompson*, *supra*, and *Mussey* v. *Holt*, 55 Am. Dec. 234, the court makes no distinction in principle between the destruction of an instrument and giving possession with intent to reconvey the title. It is not the destruction that prevents the grantee from giving evidence of its contents, but voluntarily delivering it up under the agreement.

It is not true, as contended, that the defense which we contend for is incompetent as an attempt to vary a written agreement. 1 Greenleaf's Ev. § 275.

We do not claim that the title passed by the re-delivery of the deed, but that the grantee, and appellee claiming under her, cannot offer evidence to prove the contents of an instrument voluntarily given up to the grantor with the intention of restoring the title.

*Allen & Robins*, for appellee.

1. All the evidence as to a verbal agreement made at the time of or before the execution, acknowledgment, and delivery of the deed by appellant to Mrs. Mitchner, is incompetent as seeking to vary a writing. 1 Greenleaf's Ev. § 275 *et seq. ;* Devlin on Deeds, 282.

By such parol evidence it could not be shown that the deed was delivered as an escrow. It was delivered to the grantee. In case of an escrow the delivery must be to a third person. Devlin on Deeds, § 312 *et seq.* This instrument was delivered as a deed, and accepted as such.

2. If we concede that the proof is sufficient to show that the deed was handed back to the appellant by the grantee, still our case is not affected, for this would not operate to revest the title in the defendant. Under the statute of frauds land can only be conveyed by writing. *Whitton* v. *Smith*, 1 Freeman Ch. 231 ; *Partee* v. *Mathews*, 53 Miss. 140 ; *Kelly* v. *Wagner*, 61 Ib. 299 ; 4 Am. Dec. 267 ; 12 Ib. 687 ; 13 Ib. 57 ; 59 Ib. 329 ; 2 Johns. (N. Y.) 84 ; 8 Ib. 394 ; 7 Wend. (N. Y.) 364 ; 11 Ib. 617 ; 8 Cow. (N. Y.) 71 ; 6 Hill. (N. Y.) 469 ; 51 Ala. 392 ; 66 Ib. 64 ; 21 Ark. 80 ; 23 Pick. 231 ; *Graysons* v. *Richards*, 10 Leigh (Va.), 57 ; Devlin

on Deeds, § 300 *et seq.;* Brown's St. Frauds, § 44 *et seq.;* Ib. 115 ; 2 Reed's St. Frauds, 783 ; Bishop on Contracts, 821 ; Sedgwick & Wait on Trials, 846.   Our courts refuse to engraft any exceptions on the statute of frauds, 9 S. & M. 210 ; 13 Ib. 96 ;  42 Miss. 380, 724 ; 54 Ib. 480.

3. There is no element of estoppel in this case.   It is not pre-tended that the position of the parties was changed by anything that was said or done ; nor is it claimed that there was any fraud committed by the grantee.

Argued orally by *R. C. Beckett,* for appellant, and *J. M. Allen* and *J. Q. Robins,* for appellee.

Campbell, C. J., delivered the opinion of the court.

Upon the facts, as stated by the appellant herself, the appellee is entitled to the decree rendered in his favor.   She made a deed con-veying the land to her daughter, and delivered it to her upon some verbal agreement as to its future disposition in certain contingencies, and it was surrendered to her by her daughter before she died. Grant it all.   The title was in the daughter by the conveyance, and its surrender and cancellation had no effect on the title.   A deed cannot be delivered to the grantee as an escrow, and any verbal agreement between grantor and grantee qualifying the effect of a delivery is of no effect.   We repudiate as unsound the doctrine that a surrender and cancellation of a conveyance of title to land in any manner affects the rights of parties, except where upon the principles of law there exist the elements of estoppel *in pais,* of which the surrender of the evidence of title might be one.   In itself it amounts to nothing.   *Burton* v. *Wells,* 30 Miss. 688 ; *Partee* v. *Mathews,* 53 Ib. 140 ; *Kelly* v. *Wagner,* 61 Ib. 299 ; *Connor* v. *Tippett,* 57 Ib. 594 ; Devlin on Deeds, § 300 *et seq.;* Reed on Stat. Frauds, § 782, 784, and cases cited ; 2 Amer. & Eng. Enc. Law, 719.

We would have been better satisfied with the decree if the Chan-cellor had taxed the complainant with the costs of all the testimony, or had divided it between the parties, as might properly have been done, in view of the fact that the case might have been set for

hearing on bill and answer with the same result as was reached at last, but do not feel authorized to change the decree even as to this, and therefore it is                                                    *Affirmed.*